HOOPER, Appellant, *vs.* HOOPER, Respondent.

1. Under the act of March 12, 1849, amendatory of the act of 1845, concerning divorces, it is not necessary that indignities, to be the ground of a divorce, should be offered *to the person.*
2. Under the act of March 12, 1849, amendatory of the act of 1845, the writing of a letter by a husband to his wife, declaring his determination never again to live with her, assigning no other reason than that she did not suit him, that he had been deceived in her, and that she had been guilty of improper conduct towards his relatives, is not an indignity which is a ground for a divorce.
3. Nor is the posting up of a notice by the husband, notifying all persons not to credit the wife, any ground for a divorce.
4. Abandonment without cause and refusal to provide for and support a wife is good ground for a decree for maintenance, under the ninth section of the act of 1845.

*Appeal from Cass Circuit Court.*

*Gardenhire,* for appellant. 1. The facts shown in the petition entitle the plaintiff to a divorce. In *Lewis* v. *Lewis,* 5 Mo. Rep. 278, this court decided that the charge of infidelity was such a personal indignity as was contemplated by the statute. In *Cheatham* v. *Cheatham,* 10 Mo. Rep. 296, this decision was overruled. At the next session of the general assembly, (in 1849,) the law was changed. The words " indignities to the other" were substituted for " indignities *to the person* of the other." The object of this change was to make the law what it was supposed to be in the case of *Lewis* v. *Lewis.* Abandonment and advertisement are as well calculated to render the condition of the wife intolerable, as the charge of infidelity. But if the facts stated in the petition are not sufficient for a divorce, they certainly entitle the plaintiff to a decree for maintenance, and on that account the demurrer ought to have been overruled. R. C. 1845, tit. " Divorces," sec. 9.

*Hicks,* for respondent. The petition does not specify any of the causes for a divorce enumerated in the act. Session acts of 1849. The letter contains no charges which are such

indignities as the act contemplates. Advertisement is no ground for a divorce; nor is a mere threat of abandonment. It is conceded that, if the defendant had abandoned her and absented himself from her for two years, it would have been a ground for a divorce, under a clause in the first section of the act of 1846.

GAMBLE, Judge, delivered the opinion of the court.

The plaintiff, Susan W. Hooper, filed her petition for a divorce and for alimony, alleging that her husband, a few months after their marriage, and when he was absent from her at his father's residence, wrote a letter to her, in which he declared his determination never again to live with her, stating no other ground or reason for such determination, than that she did not suit him, and that he had been deceived in her, and that her improper manner toward his relations had occasioned him the loss of about a thousand dollars. The petition states also, that immediately after writing the letter, the husband caused several notices in writing to be posted up in the county, in which he notified all persons not to trust his wife, as he would not pay any debts she might contract. It is further alleged that he has carried out his declared purpose of not living with the complainant, and has, without any cause, abandoned her, and refused to maintain and provide for her. The petition alleges that the conduct of her husband was such as to render her condition wretched and intolerable, but this is stated without any other specification of misconduct on his part, than the letter and notice before mentioned. The husband filed a demurrer to the petition, which was sustained, and judgment given for the defendant..

1. Since the decision in *Cheatham* v. *Cheatham*, 10 Mo. Rep. 296, the act of 1845, upon the subject of divorces, has been somewhat modified by the act of March 12, 1849. Sess. acts, 1849. The first section of the act of 1845 prescribed the causes for which divorces might be granted, and among them was the offering of such indignities " *to the person*" of the

complainant, as rendered his or her condition intolerable. Under this act, *Cheatham* v. *Cheatham* was decided, in which it was held, that the indignities for which a divorce might be granted, were in some way connected with the person of the party, and that the charge of moral delinquencies, however gross, was not a ground for a divorce. The act of 1849, which enumerates the causes of divorce, and repeals the first section of the act of 1845, which stated the causes of a divorce in that act, omits the words, "*to the person*," which were in the act of 1845, and declares that it shall be a cause of divorce that either party " shall offer such indignities to the other, as shall render his or her condition intolerable."

This act must be regarded as designed to change the law, as declared in *Cheatham* v. *Cheatham*, and to leave open for decision, in each case, the question, whether the acts complained of are such indignities as to render the condition of the complainant intolerable.

2. It is impossible to lay down any rules that will apply to all cases, in determining what indignities are grounds of divorce, because they render the condition of the injured party intolerable. The habits and feelings of different persons differ so much, that treatment which would produce the deepest distress with one would make but a slight impression upon the feelings of another. It is impossible, therefore, under the statute, to specify particular acts as the indignities for which divorces may, in all cases, be granted; for it is not possible to state the effect of such acts, in rendering the condition of all persons injured intolerable. The legislature chose to leave the subject at large, and by the general words employed, evidently designed to leave each case to be determined according to its own peculiar circumstances. In the present case, the conduct of the husband, in writing the letter to his wife, appears to be a wanton act of cruelty, but it was confined to her, and not published to the world. It could not be known to the world but through her own act; it charged her with no offence; it alleged no immoral act; it was but the expression of his deter-

mination to abandon her, without giving any decent pretext for the act. It was not an indignity rendering her condition intolerable.

3. So, the notice to persons not to credit her, connected as it was with the abandonment on his part, was not in itself an indignity requiring a divorce to be granted. Although, in fact, such notices are often published, when the wife elopes from the home of the husband, yet here, there was no such accusation.

4. But the case presented by the petition is clearly one for the allowance of liberal support and maintenance to the wife, under the ninth section of the act of 1845, (R. C. 428.) That section provides, "that when the husband, without good cause, shall abandon his wife, and refuse or neglect to maintain and provide for her, the court shall decree such support and maintenance to be provided and paid by the husband," &c. The petition states a case which clearly comes within this provision of the statute, and states it with all the circumstances of wantonness in his abandonment, and of the destitution of the wife, which requires a decree to be made for support and maintenance. The demurrer, while it was well enough taken to so much of the petition as sought a divorce, should have been overruled, because the petition stated a case upon which the court should have made a decree in favor of the wife, under the ninth section of the act of 1845.

The judgment of the Circuit Court is, with the concurrence of the other judges, reversed, and the cause remanded.